CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 03, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHANE DAGGS, | ) |
| Plaintiff, | ) Case No. 7:24-cv-00837 |
| v. | ) **MEMORANDUM OPINION** |
| WARDEN R. MAURICE, *et al.*, | ) By: Hon. Thomas T. Cullen |
| Defendants. | ) United States District Judge |

Plaintiff Shane Daggs ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against various officials at the Green Rock Correctional Center ("GRCC") in Chatham, Virginia, where he is housed. (*See* Compl. [ECF No. 1].) Plaintiff alleges that Defendants Warden R. Maurice, Assistant Warden R. Bateman, and Major J. Patters (collectively, "Defendants") violated his rights under the First Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment, when they cancelled Messianic Jewish services on several occasions. (*See id.*) This matter is before the court on Defendants' motion for summary judgment. (Defs.' Mot. for Summ. J. [ECF No. 16].) After review of the available evidence, the court concludes that the cancellation of services did not substantially burden Plaintiff's right to free exercise of his religion and accordingly will grant the motion for summary judgment.

# I.

Plaintiff's claims arise from events occurring while he was incarcerated at GRCC. (*See* Compl. [ECF No. 1] at 2.)[1] Plaintiff, who is a Messianic Jew, regularly attends religious services at GRCC. On or about April 19, 2024, the Messianic Jewish service was scheduled to be held in the Department of Education ("DOE") building. (*Id.* at 4.) On his way to the service, Plaintiff was stopped by a correctional officer who informed him that the Messianic Jewish service was cancelled. (*Id.*) Plaintiff alleges that he "went through the same situation" the next day as well. (*Id.*) He contends the cancellation of the service violated his First Amendment right to assembly and free exercise of his religion. (*Id.*)

For their part, Defendants assert (and Plaintiff does not dispute[2]) that "all classes and programs, including religious services, scheduled to be in the [DOE] . . . were cancelled because the building was closed due to a potential security threat." (Aff. of R. Maurice ¶ 5, Mar. 10, 2025 [ECF No. 17-1].) Defendants further assert that "[t]he inmate population was notified and Institutional Program Manager ("IPM") Wade worked to reschedule the services and programs that were cancelled." *Id.* Messianic Jewish services were held on both April 22 and 23, and Plaintiff was listed on the Master Pass List to participate in both services. (*Id.* ¶ 6.)

---

[1] Due to the fractured nature of Plaintiff's filings, references to Plaintiff's filings will be solely by ECF number and the pagination assigned in that system.

[2] In an unsigned declaration, Plaintiff concedes that "public safety is a government interest dealing with prison," and he apparently admits that his religious service was rescheduled by noting that prison officials "had enough time to relocate or reschedule my religious service." (Decl. of Shane Daggs p. 3, Apr. 11, 2025 [ECF No. 19].) But because the declaration is not signed, it has no evidentiary value. *See* 28 U.S.C. § 1746 (requiring unsworn declarations to be signed); *United States v. Santiago*, No. 4:19-cv-98, 2023 WL 2720809, at *7 (E.D. Va. Mar. 30, 2023); *United States v. Witasick*, No. 4:07-cr-30, 2014 WL 1355433, at *4 (W.D. Va. Apr. 7, 2014). The court nevertheless accepts Plaintiff's representations.

Plaintiff also alleges that Defendants violated his rights under the Fourteenth Amendment's Equal Protection Clause. (*See* ECF No. 1-1, at 6.) On or about April 26, 2024, it was "announce[d] . . . over the loudspeaker in housing unit B-1" that "all religious programs" were canceled. (*See id.*; ECF No. 1, at 2.) But according to Plaintiff, only Messianic Jewish services were canceled, while "the Islamic groups and other religious groups still had their religious services." (*See* ECF No. 1-1, at 6.) Plaintiff alleges that Messianic Jewish services were also cancelled on April 27 and April 28, 2024. (*See id.* at 8; ECF No. 1, at 2.) For their part, Defendants assert that all religious services were cancelled on those dates because of a "possible security threat within the prison," but the Messianic Jewish service was relocated to the A/B Dining Hall on April 27. (*See* Maurice Aff. ¶ 8 & Ex. C.)

On December 2, 2024, Plaintiff filed this action against Defendants Warden R. Maurice, Assistant Warden R. Bateman, and Major J. Patterson, alleging violations of his rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (*See generally* ECF No. 1.) Defendants filed the present motion for summary judgment on March 17, 2025. (ECF No. 16.) The motion has been fully briefed by the parties. The court has reviewed Plaintiff's allegations, the arguments of the parties, and the applicable law, and the motion is ripe for disposition.

## II.

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When ruling on a motion for summary

judgment, "[t]he court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023). The court "may not weigh the evidence or make credibility determinations." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (internal quotation omitted). Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

A *pro se* litigant's verified complaint and other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

Defendants seek summary judgment on two grounds: (1) Plaintiff's First Amendment claim fails because Plaintiff has not demonstrated a substantial burden on his right to freely exercise his religion; and (2) Plaintiff has failed to allege sufficient facts to establish a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment.[3] The court will address each argument in turn.

#### A. Plaintiff's First Amendment Claim

Plaintiff alleges that "[his] right to attend[]/assembly was violated" when the Messianic Jewish services at GRCC were cancelled on April 19 and April 20, 2025.

The Free Exercise Clause of the First Amendment "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." *Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019) (citations omitted). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Id.* (quoting *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018)). "[T]o demonstrate that his religious practice has been substantially burdened, a plaintiff must demonstrate that a governmental entity substantially

---

[3] Defendant also argues that, insofar as Plaintiff is attempting to sue Defendants in their official capacities, Defendants are immune from suit. The court therefore construes this action to be brought against Defendants in their individual capacity.

Pageid#: 123

pressured him to modify his behavior and to violate his religious beliefs." *Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012) (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).

Assuming that Plaintiff does hold a sincere religious belief,[4] his First Amendment claim fails because Plaintiff has not established that the cancellation of Messianic Jewish services on April 19 and April 20 "place[d] a substantial burden on his ability to practice his religion." *Greenhill*, 944 F.3d at 250. Plaintiff planned to attend Messianic Jewish services on April 19 and April 20, 2025. (*See* Compl. 4.) These services were cancelled by GRCC officials, which forced Plaintiff to modify his behavior, either by postponing his worship or finding another means to express it. (*See id.*) However, Plaintiff has failed to establish that this modification violated his religious beliefs. Plaintiff has not alleged that attending services on the cancelled dates was a fundamental requirement of the Messianic Jewish religion or that he could not otherwise practice his religion based on the cancellation of those services. Therefore, although Plaintiff was forced to modify his behavior due to the cancelled services, Plaintiff has not alleged that he was "substantially pressured . . . to violate his religious beliefs." *Krieger*, 496 F. App'x at 325. Thus, Plaintiff has failed to establish that his ability to practice the Messianic Jewish religion was substantially burdened by the cancellation of services on April 19 and April 20, 2025.

Even if Plaintiff could show a substantial burden on his ability to practice his religion, his First Amendment claim would still fail. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

---

[4] In their motion for summary judgment, Defendants "assume without conceding" that Plaintiff has a sincere belief in the Messianic Jewish religion.

- 6 -

interests." *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). "[S]everal factors are relevant in determining the reasonableness of the regulation at issue," including: (1) the connection between the regulation and a legitimate penological interest; (2) the existence of alternative means of exercising the right; (3) the impact accommodations will have on guards, other inmates, and the allocation of prison resources; and (4) "the absence of ready alternatives." *Turner*, 482 U.S. at 89–91. "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126 (2003) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Shaw v. Murphy*, 532 U.S. 223, 232 (2001)).

The undisputed facts establish that on April 19 and April 20, 2025, all events scheduled to be held in the DOE were cancelled due to a potential security threat. (Maurice Aff. ¶ 8.) The safety of prison inmates and employees is a legitimate penological interest, and Plaintiff has failed to meet his burden by proving that the cancellation was unreasonable based on the *Turner* factors. Accordingly, even if had Plaintiff established a violation of his rights under the First Amendment, his claim would still fail.

**B. Plaintiff's Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment "prohibits states from placing people into different classes and treating them unequally for reasons 'wholly unrelated' to permissible government objectives." *Kadel v. Folwell*, 100 F.4th 122, 141 (4th Cir. 2024) (quoting *Reed v. Reed*, 404 U.S. 71, 75–76 (1971)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or

purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If a plaintiff makes such a showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002). In the prison context, this involves determining "whether the disparate treatment is reasonably related to any legitimate penological interests." *Id.* (citations omitted); *see also Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) ("To account for the unique health and welfare concerns in the prison context, our review of a plaintiff's challenge to a prison decision or policy is more demanding, as we accord deference to the appropriate prison authorities.").

Defendant argues that Plaintiff has not stated a plausible equal protection claim because the undisputed facts do not establish that he was similarly situated to inmates treated differently, or that any unequal treatment that occurred was the result of intentional or purposeful discrimination.[5] The court agrees.

Plaintiff's equal protection claim arises from the cancelled Messianic Jewish services from April 26–28, 2025. (*See* ECF No. 1-1 at 10.) Plaintiff has alleged that other religious groups were permitted to hold religious services on those dates.[6] (*See id.*) However, Plaintiff has failed to allege that those religious groups were similarly situated to the Messianic Jews. The Messianic Jewish services were cancelled due to a security breach in the DOE building.

---

[5] A comparator is not required when there is direct evidence of discrimination. *See, e.g.*, *Peterson v. Burris*, No. 17-1291, 2017 WL 8289655, at *3 (6th Cir. Dec. 8, 2017) ("To establish an equal protection violation, *in the absence of direct evidence of discrimination*, a prisoner must allege that the defendants treated differently a similarly situated prisoner who was not a member of the protected class." (emphasis added)). In the absence of direct evidence of discrimination, however, failure to identify a similarly situated comparator may be fatal to the claim. *See, e.g.*, *English v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024) (finding no triable fact as to Plaintiff's equal protection claim where he had "not attempted to identify any better-treated individuals similarly situated to him").

[6] According to Warden Maurice, all religious services on April 26 and 27 were cancelled and rescheduled due to a security threat at GRCC. (*See* Maurice Aff. ¶¶ 7–8 & Encl. C.) Plaintiff does not address whether he was able to attend the rescheduled services.

(Maurice Aff. ¶ 8.) Significantly, Plaintiff has not shown that other groups were permitted to hold services in the DOE building.[7] Without such a showing, the court cannot conclude that the other religious groups who held services were similarly situated to Plaintiff. And the court cannot overlook the undisputed fact that the April 27 Jewish service was relocated to the A/B Dining Hall that same day. (*See* Maurice Aff. Encl. C.)

Were the first element met, Plaintiff's equal protection claims would still fail because the undisputed facts do not suggest, let alone establish, that any unequal treatment was the result of purposeful and intentional discrimination against the Messianic Jewish religion. Messianic Jews were permitted to hold services on April 22 and 23, 2024, and their services were only cancelled (and rescheduled) when there was a security breach in the DOE building. (*Id.* at ¶¶ 6–8.) Plaintiff has not offered any evidence that would allow the court to conclude that any unfair treatment was the result of discrimination. Therefore, no reasonable jury would find in favor of Plaintiff on his equal protection claim, and Defendants are entitled to summary judgment on that claim as well.

---

[7] And insofar as Plaintiff has offered evidence that some services were, in fact, held on April 26 (*see* ECF No. 19-1, at 6–7), his evidence also establishes that services were cancelled on that date *beginning at* 2:30 p.m. (*see id.* at 8). Since Plaintiff has not offered any evidence as to when the services in question were scheduled and held, he has not come forward with admissible evidence to sustain the bare minimum of his allegations, let alone his constitutional claim.

## IV.

For the reasons discussed above, the Court will grant Defendants' motion for summary judgment and this case will be dismissed in its entirety.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 3rd day of September, 2025.

>  /s/ Thomas T. Cullen
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE